UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DESIGN NINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18 CV 428 CDP |
| | ) | |
| ARCH RAIL GROUP, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff, Design Nine, Inc., brings this action against its former employees, defendants John S. Ebersohl, James K. Kendall, and Edward D. Harster, and against Arch Rail Group, LLC, the company they formed to compete with Design Nine. Plaintiff alleges that the individual defendants formed their own company, Arch Rail, and began competing with Design Nine while still employed there. Design Nine alleges that, among other things, defendants misappropriated its trade secrets, including a propriety spreadsheet with formulas and a measuring device used to determine the dimensions for replacing railroad bridge ties. The complaint has fifteen counts – four for statutory violations of misappropriating trade secrets, one claim for violating the Missouri Computer Tampering Act, and ten counts raising various common law claims. Defendants seek to dismiss the case or in the alternative for more definite statement. They argue that the complaint fails to state

a claim upon which relief can be granted and that the common law claims are preempted by the trade secret statute.

I will grant the motion in part and deny it in part. First, I conclude that Counts 1 through 4 of the complaint properly allege facts that, if proved, would constitute misappropriation of trade secrets under both the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836(b)(1), and the Missouri Uniform Trade Secrets Act (MUTSA), Mo. Rev. Stat. § 417.455. Moreover, the complaint (with the exception of Count 6) complies with Rule 8(a), Fed. R. Civ. P., and provides more than adequate notice to defendants of what trade secrets they are alleged to have misappropriated and what conduct they are accused of that is alleged to be wrongful. To the extent that defendants argue that many of the other claims are preempted by MUTSA, that argument is premature. Although some of the other claims certainly may be precluded if plaintiff is able to prove its allegations about the trade secrets, that is not something that can be determined on a motion to dismiss. However, I agree with defendants that three of the counts – Count 6 (tortious interference with business expectancy), Count 12 (for prima facie tort) and Count 13 (for unfair head start) – fail to state claims on which relief may be granted, and those counts will be dismissed. I will otherwise deny the motion to dismiss.

**Background**

Design Nine is an engineering firm that provides a variety of engineering services to railroads and industries served by railroads. In the mid-1990s, Design Nine created a specialized measuring device that is used to measure "existing bridge structures to determine edges of steel girders relative to the existing center line of track and used to dimension location of holes for hook bolts on new timber bridge ties." [ECF 1 ¶ 12].[1] Design Nine uses this device "almost exclusively" with work for the Union Pacific Railroad Company (UPPR). *Id*. at ¶ 11. According to the complaint, the device accurately and efficiently assists with measurements that are used to produce the prefabrication of replacement railroad timbers and ties for UPPR related projects. *Id*. at ¶ 13-15.

Design Nine alleges that the bridge survey device is a trade secret. *Id*. at ¶ 30. According to the complaint, Design Nine limited access to the bridge survey device by only maintaining one device and by limiting the number of employees who could use the device. Further, Design Nine alleges it did not advertise, discuss, or disclose the device to outside individuals, except to UPPR personnel at work sites. *Id*. at ¶ 31 and ¶ 32. In addition to the bridge survey device, Design Nine further alleges a proprietary spreadsheet "with formulas" as a trade secret. *Id*. at ¶ 30. Design Nine used the spreadsheet to "calculate dimensions, quantities, and

---

[1] Design Nine's complaint refers to the measuring device as a "bridge survey device" and I will refer to the measuring device as such.

3

other data for new bridge timbers to be utilized to replace existing deteriorated timber tie decks." *Id*. at ¶ 45. Design Nine alleges that the spreadsheet was not advertised, disclosed, or shown to outside individuals, except to "select UPPR bridge engineers in Omaha, Nebraska" who asked to view the spreadsheet. *Id.* at ¶ 34. Further, Design Nine alleges that the spreadsheet was password protected and access to the spreadsheet was limited "to those employees with a need to use" the spreadsheet. *Id*. at ¶ 33.

Defendants Ebersohl, Harster, and Kendall were employees of Design Nine until they resigned simultaneously in January 2018. *Id.* at ¶ 28. Ebersohl was an officer of the company with the title of Vice President and Corporate Secretary. *Id.* at ¶ 21. Kendall and Harster worked as project engineers under the supervision of Ebersohl. *Id*. at ¶ 24 and ¶ 27. According to the complaint, in October 2017, Ebersohl, Harster, and Kendall formed Arch Rail Group, LLC, while they were still employed by Design Nine. *Id.* at ¶ 40. Design Nine alleges that before forming Arch Rail, Ebersohl persuaded the corporate officers of Design Nine to build a second bridge survey device to allow additional survey work on UPRR structures. *Id*. at ¶ 35. Design Nine authorized a purchase request and entered into a contract with Designs for Tomorrow to build the second bridge survey device. *Id*. at ¶ 37 and ¶ 38. Design Nine alleges that defendants paid for the second

device but then took it for their own use at Arch Rail, instead of delivering it to Design Nine. *Id*. at ¶ 44.

Plaintiff alleges that while defendants were still employed at Design Nine, they accessed and copied confidential information such as financial statements, customer and vendor contracts, invoices, hourly pay rates, personnel documents, payroll and tax information, client lists, internal training resources, company procedures, and other private Design Nine documents. *Id*. at ¶ 55. It alleges that Ebersohl deleted his Google Chrome browser history to hide his transfer of confidential information to Arch Rail. *Id.* at ¶ 57. Design Nine also alleges that after the defendants resigned from Design Nine, they used Design Nine's software license to access a vendor's software program to draft and design work for a customer. *Id.* at ¶ 58.

Design Nine alleges the defendants marketed to Design Nine's customers and met with UPPR to discuss business opportunities. *Id.* at ¶ 60-61. Further, Design Nine alleges that the defendants represented to UPPR that Design Nine could no longer work on UPPR's projects and UPPR should no longer contract with Design Nine to perform railroad services. *Id.* ¶ 62-63.

## Discussion

Defendants argue that the complaint is deficient under Rule 8(a), Fed. R. Civ. P., because of the collective grouping of defendants and because the general

accusations do not give them fair notice of the allegations of each claim. They also move to dismiss all counts under Rule 12(b)(6), Fed. R. Civ. P., for failure to state claims upon which relief may be granted. Further, defendants argue that if the trade secret counts are properly pled (Counts 1-4), then MUTSA preempts all of the remaining Counts (5-15) because all counts share a common basis of fact.

Design Nine responds that the complaint satisfies the pleading requirements of Rules 8(a) and 12(b)(6) because it provides a sufficient factual basis to establish that each claim is plausible on its face and to inform the defendants of what they must defend against. Design Nine states that the complaint identifies each trade secret and the complaint gives fair notice to the defendants of the accusations against them. Further, Design Nine argues that it is entitled to allege claims in the alternative and that MUTSA does not preempt Counts 5 through 15.

Rule 8(a)(2), Fed. R. Civ. P., provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." 550 U.S. 544, 555 (2007); accord *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Specifically, to survive a motion to dismiss, a complaint must contain enough factual allegations, accepted as true, to state a claim for relief "that is plausible on its face." *Twombly*, 550 U.S. at 570.

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. When considering a 12(b)(6) motion, the court assumes the factual allegations of a complaint are true and construes them in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). I am not, however, required to accept the legal conclusions the plaintiffs draw from the facts alleged. *Id*. at 555; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). Drawing on my "judicial experience and common sense," I must consider the plausibility of each claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp*., 592 F.3d 893, 896 n. 4 (8th Cir. 2010).

Applying these standards, I conclude that Counts 1 through 4 sufficiently allege the misappropriation of trade secrets under both the both the DTSA and the MUTSA. Of the remaining counts, only Counts 6, 12 and 13 (tortious interference with business expectancy) fail to state claims upon which relief may be granted. While some (but not necessarily all) of the other counts may indeed be preempted if it is proven that the bridge survey device, spreadsheet, and other items are in fact trade secrets, I cannot make that determination at this stage of the case. If, on the other hand, the items are not proven to be trade secrets, then Design Nine may still have the opportunity to attempt to prove any common law claims that would otherwise be preempted by MUTSA.

## Trade Secret Misappropriation Claims – Counts 1 - 4

In four separate counts, Design Nine alleges that the defendants misappropriated Design Nine's trade secrets with respect to the bridge survey device and the propriety spreadsheet in violation of the Defend Trade Secrets Act, (DTSA) 18 U.S.C. § 1836(b)(1), and the Missouri Uniform Trade Secrets Act (MUTSA), Mo. Rev. Stat. § 417.455.

To state a claim for misappropriation of a trade secret under the DTSA, a plaintiff must show that "the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The DSTA defines a trade secret broadly as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if – (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). Under the DTSA, a misappropriation occurs when: (1) a person acquires the trade secret while knowing or having reason to know that he or she is doing so by improper means; (2) a person who has acquired or derived knowledge of the trade secret discloses it without the owner's consent; or (3) when

a person who has acquired or derived knowledge of the trade secret uses it without the owner's consent. 18 U.S.C. § 1839 (5).

To state a claim under MUTSA, a plaintiff must demonstrate (1) the existence of protectable trade secrets, (2) misappropriation of those trade secrets by the defendant, and (3) damages. Mo. Rev. Stat. § 417.453(2). MUTSA defines a "trade secret" as:

> information, including but not limited to, technical or nontechnical data, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mo. Rev. Stat. § 417.453(4). The existence of a trade secret is a conclusion of law based on the applicable facts. *Lyn–Flex W., Inc. v. Dieckhaus*, 24 S.W.3d 693, 698 (Mo. Ct. App. 1999).

The complaint provides a sufficient factual basis to allege violations of both trade secrets statutes at this stage in the litigation. The arguments presented by the parties regarding the allegations under the DTSA and MUTSA are identical; therefore, I will treat the claims together. *See Flowshare, LLC v. TNS, US, LLC*, No. 4:16CV300JAR, 2017 WL 3174321, at *5 (E.D. Mo. July 26, 2017) (noting the similarities between the parties' arguments regarding MUTSA and DTSA claims and analyzing the claims together).

9

A trade secret may be alleged broadly as there is no specific requirement for particularity of trade secret allegations during the pleading stage. *See EnviroPAK Corp. v. Zenfinity Capital, LLC*, No. 4:14CV00754 ERW, 2015 WL 331807, at *4 (E.D. Mo. Jan. 23, 2015). Defendants rely upon *EnviroPAK* to attempt to show that Design Nine failed to identify a specific product. [ECF 27 at 7]. But Design Nine did specifically allege that the bridge survey device and proprietary spreadsheet were trade secrets. These are specific allegations of trade secrets. In *EnviroPAK*, the trade secret claim was deemed plausible even though the factual allegations were "dangerously general." *EnviroPAK*, 2015 WL 331807 at 4. Design Nine's complaint describes how the bridge survey device works and why these measurements are of economic value, whereas the complaint in *EnviroPAK* merely stated that the plaintiff used confidential processes in making its products. *Id*. The spreadsheet could also suffice as a trade secret because it contains formulas and other data that create independent economic value from its secrecy. Mo. Rev. Stat. § 417.453(4); 18 U.S.C. § 1839(3). More specific factual determinations regarding any alleged trade secret "is premature at this point" and more appropriate for the summary judgement stage. *Roeslein & Assocs., Inc. v. Elgin*, No. 4:17 CV 1351 JMB, 2018 WL 1138465, at *9 (E.D. Mo. Mar. 2, 2018). At the motion to dismiss stage, Design Nine has sufficiently alleged the existence of trade secrets.

Design Nine has also sufficiently alleged that the defendants misappropriated the secrets and that it was damaged as a result, thereby sufficiently alleging claims under the MUTSA and DTSA. Design Nine alleges that Ebersohl, Kendall, and Harster misappropriated a copy of the proprietary spreadsheet. [ECF 1 ¶ 52]. It alleges that the second bridge survey device was misappropriated when Harster paid for and the defendants failed to deliver the device to Design Nine. *Id.* at ¶ 42 and ¶ 43. Design Nine has claimed it is damaged from the loss of trade secrets because of lost profits. *Id.* at ¶ 68. I will deny defendants' motion to dismiss Counts 1 through 4.

## MUTSA Preemption

Defendants argue that if the trade secret counts survive dismissal, then all the other counts are preempted by MUTSA. Generally, MUTSA will "displace conflicting tort, restitutionary, and other laws…providing civil remedies for misappropriation of a trade secret." Mo. Rev. Stat. § 417.463.1. Federal courts have held that this provision preempts "civil claim[s] that are derivative of a claim of misappropriation of trade secrets[.]" *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, No. 4:00CV70CEJ, 2002 WL 32727076, at *4 (E.D. Mo. Feb. 25, 2002). Common law claims are preempted "if they are based on facts related to the misappropriation of trade secrets claim." *Reliant Care Mgmt., Co. v. Health Sys., Inc.*, No. 4:10CV38 CDP, 2011 WL 4369371, at *1 (E.D. Mo. Sept. 19, 2011). A

claim based on facts that are independent of the trade secret claims, however, will not be preempted.

At this stage in the litigation, a ruling that all the common-law counts are preempted would be premature. While determining whether something is a trade secret is a matter of law, that legal determination must be based on evidence showing that the claimed secrets meet the statutory definitions. If Design Nine proves its allegations that the items are in fact trade secrets, then any of the common law claims based on those same items are preempted. But until that determination is made, I cannot rule which, if any, of the common law counts are preempted. *EnviroPAK*, 2015 WL 331807 at 6 ("As a practical matter, until this Court is able to make a determination as to whether the information … qualifies as a trade secret, the Court cannot rule on the precise extent" of preemption); *see also Flowshare,* 2017 WL 3174321 at 6; *Custom Hardware Eng'g & Consulting, Inc. v. Dowell,* 918 F. Supp. 2d 916, 936 (E.D. Mo. 2013) (dismissing breach of loyalty claim on a motion for summary judgment after evidence demonstrated the claim was derivative of the trade secret claims).

## Count 5 – Missouri Computer Tampering Act

Count 5 states a viable cause of action because the claim is premised upon the misappropriation of confidential information and unauthorized access to a computer system. This claim does not depend on whether the items tampered with

are trade secrets.  Under the Missouri Computer Tampering act (MCTA), a person commits an act of computer tampering if "he or she knowingly and without authorization or without reasonable grounds to believe that she has such authorization:

> (1) Modifies or destroys data or programs residing or existing internal to a computer, computer system, or computer network; or (2) Modifies or destroys data or programs or supporting documentation residing or existing external to a computer, computer system, or computer network; or (3) Discloses or takes data ... residing or existing internal or external to a computer, computer system, or computer network; or (4) Discloses or takes a password, identifying code, personal identification number, or other confidential information about a computer system or network that is intended to or does control access to the computer system or network; (5) Accesses a computer, a computer system, or a computer network, and intentionally examines information about another person; (6) Receives, retains, uses, or discloses any data he knows or believes was obtained in violation of this subsection.

Mo. Rev. Stat. § 569.095.  The statute provides a civil cause of action, "in addition to any other civil remedy available" for the owner of the "computer system, computer network, computer program, computer service or data" against any person who violates the statute.  Mo. Rev. Stat. § 537.525.

Design Nine alleges that Ebersohl unlawfully accessed, copied, and transferred computer-stored confidential information to storage devices maintained by the defendants, that he deleted data by wiping his Google Chrome browser history, and that the defendants improperly accessed a software license after they resigned from Design Nine.  [ECF 1 at ¶ 56-58].   These are sufficient allegations

under the MCTA that defendants accessed, obtained, or destroyed computer data and/or software without authorization. *See InfoDeli, LLC v. Western Robidoux, Inc.,* No. 4:15-CV-00364-BCW, 2016 WL 6920547, at \*1 (W.D. Mo. Feb. 26, 2016) (denying defendant's motion to dismiss because the plaintiffs properly pled that the defendants violated the MCTA by accessing, retaining, or disclosing data without approval); *see also Lasco Foods, Inc. v. Hall & Shaw Sales, Mktg., & Consulting, LLC*, No. 4:08CV01683 JCH, 2009 WL 3523986, at \*5 (E.D. Mo. Oct. 26, 2009). I will deny defendants' motion to dismiss Count 5.

### Count 6 – Tortious Interference with Business Expectancy

Under Missouri law, the elements of claim of tortious interference with business expectancy are: (1) a valid business expectancy; (2) defendant's knowledge of the relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages. *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 250 (Mo. banc 2006).

Count 6 makes very general allegations. It alleges that Design Nine had valid business expectancies in *all* of its customer and business relationships, that defendants knew all of this by virtue of their positions, that defendants, through *all* of their actions in competing, planning to compete, and acquiring confidential information, tortiously interfered with *all* of these expectancies. Plaintiff then alleges that as a result it lost unspecified business and profits. Nothing in the

Count is tied to any of the specific factual allegations contained in factual section of the complaint. The lack of specificity means that Count 6 fails to meet the pleading requirements of Rules 8(a) and 12(b)(6). The allegations fail to provide any particular factual basis to establish a claim that is plausible on its face and to inform the defendants of what they must defend against. These general allegations fail to state a claim, and I will grant the motion to dismiss as to Count 6.

## Count 7 – Tortious Interference with Contract

Design Nine has alleged a plausible claim for tortious interference with contract. Design Nine contracted with Designs for Tomorrow to build the second bridge survey device and alleges that the defendants Ebersohl and Harster, on behalf of Design Nine, actually handled the negotiations with Designs for Tomorrow to build the device. [ECF1 at ¶119-120]. Design Nine alleges that the defendants intentionally interfered with a contract when they obtained the second bridge survey device for their own use at Arch Rail. *Id.* at ¶ 42 – 43, ¶ 118, and ¶ 120.

Under Missouri law, the five elements of tortious inference with contract are: (1) the existence of a contract; (2) defendant's knowledge of the contract; (3) a breach of contract induced or caused by defendant's intentional interference; (4) the lack of justification; and (5) damages. *McGuire v. Tarmac Envtl. Co.*, 293 F.3d 437, 441 (8th Cir. 2002). Missouri courts apply a "but-for" test of causation and

ask if a defendant took affirmative steps to induce the breach; and if so, if the contract would have been performed absent the alleged interference. *Id*.

The complaint here states sufficient facts to allege this claim; therefore, I will deny defendant's motion to dismiss Count 7.

## Count 8 – Breach of Duty of Loyalty

Design Nine has also sufficiently pled a plausible breach of the duty of loyalty claim. A breach of the duty of loyalty claim arises when an employee "goes beyond the mere planning and preparation and actually engages in direct competition." *Scanwell Freight Express STL, Inc. v. Chan*, 162 S.W.3d 477, 479 (Mo. banc 2005). An employee may not use confidential information unique to or acquired from the employer, nor may the employee obtain customers for a rival company. *Id*. at 480 (*citing* Restatement (Second) of Agency, § 393 cmt. e (1958)). *Scanwell* defined the elements:

> 1) In general, an employee must not, while employed, act contrary to the employer's interest; 2) however, an employee may agree with others to compete upon termination of the employment and may plan and prepare for their competing enterprise while still employed; and 3) but an employee may not, while still employed, go beyond mere planning and preparation and act in direct competition with the employer.

*Id*. at 480

Here, Ebersohl, Kendall, and Harster had access to unique and confidential information in their roles as employees of Design Nine and all three formed Arch Rail before they resigned from Design Nine. [ECF 1 at ¶ 28, ¶ 40, ¶ 53, and ¶ 54].

Further, all three defendants resigned simultaneously and Ebersohl and Harster held senior positions at Design Nine. *Id.* at ¶ 22-28. Design Nine alleges that they took actions to directly compete, including taking data and information, while still employed, which may suffice as a breach of the duty of loyalty. *See id.; see also Synergetics, Inc. v. Hurst*, 477 F.3d 949, 954 (8th Cir. 2007) (employees breached duty of loyalty by forming a competing company while still employed and using employer's trade secrets, confidential information, pricing and product information, and targeting customers). Moreover, the fact that all three defendants resigned simultaneously and held key positions supports the plausibility of the claim. Restatement (Second) of Agency, § 393 cmt. e (1958).

Accordingly, I will deny defendant's motion to dismiss Count 8.

### Count 9 – Fraudulent Misrepresentation Against Ebersohl

Design Nine states a plausible claim against defendant Ebersohl only for fraudulent misrepresentation. Under Missouri law, the elements of a fraudulent misrepresentation claim are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131–32 (Mo. 2010). Rule 9(b) of the Federal Rules of Civil Procedure requires a higher degree

of particularity, including the time when the alleged misrepresentation was made, the place and contents of the misrepresentation, the identity of the person who made the misrepresentation, and what was obtained. *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001) (internal citations omitted). In essence, "Rule 9(b) requires plaintiffs to plead "the who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011).

Count 9 alleges that in May of 2017 Ebersohl falsely represented to Design Nine that a second bridge survey device was needed to allow two crews to perform additional survey work for UPPR. [ECF 1 at ¶ 35, 38]. Design Nine relied on this misrepresentation by authorizing a purchase request in May 2017, and by entering into a contract to fabricate the second device. *Id* at ¶ 35-36, ¶ 134. Having pled the "who, when, what, where, and how," Design Nine has provided specific allegations setting out a plausible fraudulent misrepresentation claim. I will deny defendant's motion to dismiss Count 9.

### Count 10 – Conversion

Design Nine asserts a common law claim of conversion for the defendants' taking the second bridge survey device, the proprietary spreadsheet, and confidential information. Under Missouri law conversion is the "unauthorized assumption of the right of ownership over the personal property of another to the

exclusion of the owner's rights. *Emerick v. Mutual Benefit Life Ins. Co.*, 765 S.W.2d 513, 523 (Mo. 1988). A conversion claim has the following elements: (1) plaintiff was the owner or entitled to possession of the property; (2) defendant took possession of the property with intent to exercise control over the property; and (3) defendant deprived plaintiff of the right to possess the property. *JEP Enters., Inc. v. Wehrenberg, Inc.*, 42 S.W.3d 773, 776 (Mo. Ct. App. 2001).

Here, Design Nine alleges that the defendants converted the second bridge survey device when they picked up the device from Designs for Tomorrow and failed to deliver the device to Design Nine. [ECF 1 at ¶ 42-43, 143]. It is alleged that the defendants intended to deprive Design Nine of owning the second device by using the device to compete directly with Design Nine. *Id*. at ¶ 44. As the rightful owner of the second bridge survey device, Design Nine had its ownership of the bridge survey device interfered with, thereby depriving Design Nine the right to possess its property. These facts provide a sufficient basis to state a claim for conversion with respect to the bridge survey device.

To the extent Design Nine bases this claim on taking the spreadsheet and other confidential information, however, Design Nine fails to allege that it was actually deprived of its possession or control of its property. Instead, Design Nine alleges that the defendants only copied this information. [ECF 1 at ¶ 56-57]. "Under Missouri law a copy of a document cannot be converted where the owner

has not been deprived of possession of the property or prevented from utilizing the property." *Monarch Fire Prot. Dist. of St. Louis Cty., Missouri v. Freedom Consulting & Auditing Servs., Inc.*, 644 F.3d 633, 637 (8th Cir. 2011). To the extent Design Nine attempts to base this claim on taking of copies, it fails; the claim survives only to the extent it alleges conversion of the second bridge survey device. Accordingly, I will deny defendants' motion to dismiss Count 10.

### Count 11 – Breach of Fiduciary Duties Against Defendant Ebersohl

The complaint states a sufficient factual basis to allege a plausible claim against Ebersohl for a breach of fiduciary duties. Under Missouri law, a claim for breach of fiduciary duty has four elements: (1) the existence of a fiduciary relationship between the parties; (2) breach of duty; (3) causation; and (4) harm. *Lafarge N. Am., Inc. v. Discovery Grp. L.L.C.*, 574 F.3d 973, 983 (8th Cir. 2009). Corporate officers and directors possess a fiduciary relationship to the corporation because their position "is one of trust and they are bound to act with fidelity and subordinate their personal interest to the interest of the corporation should there be a conflict." *Hyde Park Amusement Co. v. Mogler*, 358 Mo. 336, 342 (1948).

Here, the complaint alleges that Ebersohl was a Vice President and an Officer of Design Nine as a Corporate Secretary and because of his position he owed Design Nine a fiduciary duty. [ECF 1 at ¶149-150]. It alleges that he breached his duty by forming a competing company that is in direct conflict with

his interests as an officer of Design Nine and that he used his position within the company to access confidential information that would contravene his fiduciary duty, thereby resulting in harm to Design Nine. This sufficiently alleges a breach of fiduciary duty claim and I will deny the motion to dismiss Count 11.

## Count 12 – Prima Facie Tort

Count 12 alleges a claim for prima facie tort, but this claim fails because Design Nine may have relief based upon traditional torts.  In Missouri, prima facie tort requires four elements: "(1) an intentional lawful act by defendant; (2) defendant's intent to injure the plaintiff; (3) injury to the plaintiff; and (4) an absence of or insufficient justification for defendant's act." *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 315 (Mo.1993).  Design Nine argues that dismissal of this claim would be premature "until the Court determines that the defendants' alleged conduct does not fall within the realm of a traditional tort category."  [ECF 23 at 17].

As discussed above, Design Nine has traditional tort remedies even if it cannot prove its trade secret claims.  Moreover, Design Nine has statutory relief for the trade secret claims and for the computer tampering act claim. Therefore, it is not proper for a plaintiff to bring a prima facie tort claim for "the inability to prove one element of a nominate tort that is otherwise applicable under the facts." *Thomas v. Special Olympics Missouri, Inc.*, 31 S.W.3d 442, 450 (Mo.App.2000).

"When it is clear that the theory is being asserted merely to circumvent an established body of law, or when it is not supported by the pleading of the factual elements giving rise to the claim, the prima facie count may be dismissed earlier." *Nazeri*, 860 S.W.2d at 316 fn. 9. I will grant defendants' motion to dismiss Count 12.

## Count 13 – Unfair Head Start

Missouri law does not recognize unfair head start as an independent tort because the head start rule is only a rule of remedy. "Missouri courts employ the 'head start' rule, which provides that by misappropriating the trade secrets, a defendant is able to 'cut short' the time it would normally take to produce and market a competitive product." *Synergetics, Inc.,* 477 F.3d at 961. This rule is a limitation on the remedy that may otherwise be available for misappropriation of trade secrets: "[a] defendant should be enjoined only for the time it would take to produce and market the competitive product, absent the misappropriation." *Id.*

Design Nine cites to several cases to support the position that a head start claim may be asserted as an independent cause of action. Design Nine is incorrect because these cases only consider an unfair head start as a remedy for some other tort. In *National Rejectors, Inc. v. Trieman*, the Missouri Supreme Court analyzed "head start" when it looked at "what the defendant should be required to pay the plaintiff" for its otherwise tortious conduct. 409 S.W.2d 1, 43–44 (Mo.1966). In

*Walter E. Zemitzsch, Inc. v. Harrison*, the Missouri Court of Appeals described "unfair headstart, or short cut liability," as a "measure of damages." 712 S.W.2d 418, 422 (Mo.App.1986). And in *Inauen Packing Equipment Corp. v. Integrated Industrial Services*, Inc., 970 S.W.2d 360 (Mo.App.1998), the Missouri Court of Appeals again explained head start in terms of compensation for misappropriation. I will grant defendants' motion to dismiss Count 13.

### Count 14 – Unfair Competition Under Missouri Common Law

In Count 14 Design Nine alleges a claim of unfair competition. While the law of unfair competition does not contain specific elements, it can be best described as a reaffirmation of the rules of fair play by prohibiting attempts to trade on another's reputation. *Cushman v. Mutton Hollow Land Dev., Inc.*, 782 S.W.2d 150, 157 (Mo.Ct.App.1990) (quoting *Shrout v. Tines*, 260 S.W.2d 782, 788 (Mo.Ct.App.1953)). To establish an unfair competition claim, a party is shown as "passing off" a product as that of another, thereby deceiving the public. *Hubbs Mach. & Mfg., Inc. v. Brunson Instrument Co.*, 635 F. Supp. 2d 1016, 1019 (E.D. Mo. 2009); *see also Nat'l Motor Club of Mo., Inc. v. Noe*, 475 S.W.2d 16, 19-20 (Mo. 1972) (unfair competition consists of passing off the business of one as the business of another). Further, deceptive marketing of goods and services allows for a plausible claim of unfair competition. *Am. Equity Mortg., Inc. v. Vinson*, 371

S.W.3d 62, 64 (Mo. Ct. App. 2012) (*citing* Restatement (Third) of Unfair Competition § 4 (1995)).

Here, Design Nine alleges that the defendants marketed to Design Nine's customers, showcasing their experience as former Design Nine employees. [ECF 1 at ¶ 60]. Further, Design Nine alleges that the defendants suggested to UPPR that Design Nine was unable to perform on specific UPPR projects. *Id.* at ¶ 62-63. These facts support a plausible claim for unfair competition. *See Am. Traffic Sols., Inc. v. B & W Sensors, LLC*, No. 4:13CV0229 AGF, 2014 WL 1272509, at *8 (E.D. Mo. Mar. 27, 2014) (allegations regarding defendant's false representations made to gain a competitive advantage over plaintiff provide a sufficient cause of action for unfair competition). Additionally, the second bridge survey device suffices as an allegation to support the unfair competition claim because it is alleged defendants are "passing off" Design Nine's product as their product to use for structural bridge work. [ECF 1 at ¶ 44]. Accordingly, I will deny defendant's motion to dismiss Count 14.

### Count 15 – Conspiracy

The complaint sufficiently alleges a cause of action for civil conspiracy. A claim of civil conspiracy requires a showing of: (1) two or more persons; (2) an unlawful purpose; (3) a meeting of the minds; (4) at least one act conducted in furtherance of the conspiracy; and (5) damages. *Oak Bluff Partners, Inc. v. Meyer*,

3 S.W.3d 777, 781 (Mo. banc 1999).  This count incorporates the wrongful conduct alleged throughout the complaint as a wrongful purpose and acts conducted in furtherance of the conspiracy. The allegations are sufficient to form the basis of the civil conspiracy claim because these counts provide a plausible factual basis that is not solely derived from the facts that support the trade secret claims.  *See Custom Hardware*, 918 F. Supp. 2d at 939 (sufficient factual grounds to support conspiracy claim based on claims that were independent of trade secrets claim).  Therefore, I will deny defendant's motion to dismiss Count 15.

## Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the defendants' Motion to Dismiss Case [15] is granted only as to Counts 6, 12 and 13, and is denied in all other respects.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 25th day of March, 2019.